UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WENDY'S INTERNATIONAL, INC, et al.,**

   **Plaintiffs,**         Case No. 2:07-cv-069
                    **JUDGE GREGORY L. FROST**
   v.               Magistrate Judge Mark R. Abel

**RONALD F. SAVERIN,**

   **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 44), Defendants' Memorandum in Opposition (Doc. No. 48), and Plaintiffs' Reply (Doc. No. 55). For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment.

### I. Background

On March 21, 1998, Western & Southern Food Services, LLC ("Western & Southern") entered into various franchise agreements ("Franchise Agreements") for the franchise and license rights to operate a number of Wendy's Old Fashioned Hamburgers Restaurants in Illinois and Missouri. Complaint ("Compl.") at 2, ¶ 7. Defendant Ronald F. Saverin personally entered into a continuing guaranty of the terms and conditions of the Franchise Agreements. Compl. at 3, ¶ 8. The agreement indicated that in the event of a breach of any promise or obligation under the Franchise Agreements by Western & Southern, Saverin would perform as if he were

1

personally liable. Exhibit 1.[1] On January 13, 1999, Western & Southern changed its name to WenAmerica, LLC ("WenAmerica"). Compl. at 3, ¶ 9. Until its termination on September 1, 2006, WenAmerica was Plaintiffs' franchisee in the city of St. Louis, Missouri, and in several cities in central Illinois. Saverin Aff. ¶ 2.[2] Saverin owned a majority of the membership interest in WenAmerica. *Id.*

By early 2006, the franchises guaranteed by Saverin were having "serious, serious, serious financial problems." Saverin Dep. at 93-94 & 97.[3] On March 2, 2006, certain Franchise Agreements were terminated due to WenAmerica's breach of, and failure to cure defaults under, the Franchise Agreements. Compl. ¶ 11. On March 22, 2006, Wendy's and WenAmerica entered into a "Reinstatement Agreement" which set forth specific terms and conditions associated with the reinstatement of the previously terminated Franchise Agreements. Compl. ¶ 12. As part of the Reinstatement Agreement, WenAmerica executed the Wendy's National Advertising Program Promissory Note ("WNAP Note") in favor of the Wendy's National Advertising Program, Inc. for the principal amount of $238,208.24, plus interest, with payments due in the amount $16,512.70 per month. Exhibit 4.[4] Additionally, WenAmerica executed the Royalty Promissory Note ("Royalty Note") in favor of Wendy's International, Inc. for the

---

[1] Citations to "Exhibit 1" are to the March 21, 1998 Guaranty attached to the Complaint filed on January 30, 2007. *See* Doc. No. 2.

[2] Citations to "Saverin Aff." are to the March 28, 2008 Affidavit of Ronald F. Saverin in Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. *See* Doc. No. 48.

[3] Citations to "Saverin Dep." are to the excerpted transcript and exhibits from the January 24, 2008 deposition of Ronald F. Saverin. *See* Doc No. 48.

[4] Citations to "Exhibit 4" are to the "WNAP Promissory Note" attached to the Complaint filed on January 30, 2007. *See* Doc. No. 2.

principal amount of $309,664.19, plus interest, with payments due in the amount of $22,016.94 per month. Exhibit 5.[5] Finally, as part of the Reinstatement Agreement, WenAmerica agreed to pay other amounts due under the original Franchise Agreements. Exhibit 3.[6] Saverin personally reaffirmed, acknowledged, and specifically agreed to the terms and provisions of the guaranty applied to the promissory notes and all related conditions of the Reinstatement Agreement. Exhibits 3, 4, 5.

Thereafter, WenAmerica failed to comply with the obligations specified in the Reinstatement Agreement and on May 16, 2006, Plaintiffs sent WenAmerica and Saverin notice that their Royalty Note and WNAP Note payments were in default. Compl. ¶ 17. The notice informed WenAmerica and Saverin that the full principal amounts were due under the WNAP Note and the Royalty Note as well as other amounts under the original Franchise Agreements and if the defaults were not cured, Plaintiffs would terminate the Franchise Agreements. *Id*. Having failed to cure their defaults, Wendy's sent WenAmerica and Saverin a "Notice of Termination" of certain Franchise Agreements. Compl. ¶ 18.

In May 2006, SPCP Group, LLC ("SPCP"), a creditor of WenAmerica, began to demand default interest rates and a lump sum payment for the debt WenAmerica owed to it or it would seek to have a receiver appointed to operate WenAmerica's business. Saverin Aff. ¶ 11. In July 2006, Saverin informed Plaintiffs of SPCP's intentions and on July 12, 2006, Plaintiffs sent a

---

[5] Citations to "Exhibit 5" are to the "Royalty Promissory Note" attached to Complaint filed on January 30, 2007. *See* Doc. No. 2.

[6] Citations to "Exhibit 3" are to the "Reinstatement Agreement" attached to Complaint filed on January 30, 2007. *See* Doc. No. 2.

3

letter to SPCP advising that Plaintiffs would immediately terminate the Franchise Agreements if a receiver were appointed over WenAmerica's restaurants. Saverin Dep. at 189-191; Counterclaim ¶ 6.[7] Following the issuance of this letter, SPCP adjourned its efforts to have a receivership. Saverin Dep. at 191.

Stemming from the Notice of Termination and the potential receivership action, Plaintiffs and WenAmerica entered into an agreement dated August 3, 2006 ("August Agreement") to provide for the orderly winding down of the WenAmerica businesses. Compl.¶ 19. Under the August Agreement, WenAmerica and Saverin expressly acknowledged the termination of all remaining Franchise Agreements. Exhibit 6.[8] However, the August Agreement allowed WenAmerica and Saverin additional time to sell the WenAmerica restaurants. Kaffenbarger Dep. 113-14[9]; Wirt Dep. 116-17.[10] Additionally, WenAmerica and Saverin acknowledged that they owed payments due under the Franchise Agreements, as well as $947,819.86 as of August 3, 2006 in past-due obligations to be paid before October 1, 2006. Exhibit 6. Further, the Agreement stipulated that upon the appointment of a receiver over any of the Franchisee's restaurants, Wendy's had the right to terminate the relevant Franchise Agreement immediately. *Id*.

---

[7]   *See* Doc. No. 35.

[8]   Citations to "Exhibit 6" are to the "August Agreement" attached to the Complaint filed on January 30, 2007. *See* Doc. No. 2.

[9]   Citations to "Kaffenbarger Dep." are to the February 6, 2008 Deposition of Kris Kaffenbarger attached to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. *See* Doc. No. 48. Mr. Kaffenbarger is Wendy's International's Vice President of Business Development.

[10]   Citations to "Wirt Dep." are to the February 8, 2008 Deposition of William Stephen Wirt attached to Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. *See* Doc. No. 48. Mr. Wirt is Wendy's International's Senior Vice President.

WenAmerica and Saverin did not pay the amounts agreed to in the August Agreement. Compl. ¶ 21.  Saverin was warned that if he failed to cure the defaults before September 1, 2006, the Franchise Agreements would be terminated under the terms of the August Agreement. Saverin Dep. 246-249.  During this time, SPCP resumed its efforts to have a receiver appointed over WenAmerica's businesses by filing a motion in the St. Louis Circuit Court.  Saverin Dep. 190; Saverin Aff. ¶ 19.  That motion was scheduled for hearing on September 1, 2006.  Saverin Aff. ¶ 19.  Prior to the hearing, Saverin contacted Plaintiffs' Senior Vice President Stephen Wirt to ask for Plaintiffs continued opposition to the appointment of a receiver.  Saverin Dep. 215; Saverin Aff. ¶ 19.  Wirt informed Saverin that he was "unsure what Wendy's position was with respect to the appointment of a receiver."  Saverin Aff. ¶ 20.  During this conversation with Wirt, Saverin stated that he would cause WenAmerica to pay amounts then owed if Wendy's would promise to assist in opposing the appointment of a receiver.  Saverin ¶ 19.  However, because Wirt would not give Saverin any assurance that Plaintiffs would assist in opposing the appointment of a receiver, Saverin did not pay the amounts owed by WenAmerica.  *Id.*

Plaintiffs did not have a representative present at the receivership hearing on September 1, 2006.  Saverin Aff. ¶ 22.  At the conclusion of the hearing, the court ordered that a receiver be appointed for WenAmerica's business.  Saverin Aff. ¶ 3.  In the hours following the receivership hearing, Plaintiffs notified WenAmerica and Saverin that it was terminating all franchises and directing that the businesses be immediately closed due to the uncured financial defaults and the appointment of a receiver.  Saverin Dep. at 249-251; Saverin Aff. ¶ 23.

On January 30, 2007 Plaintiffs filed a complaint against Saverin for breach of contract. Specifically, the complaint alleges that under the guarantees, Saverin agreed to perform or pay

5

obligations to Wendy's under the Franchise Agreements, the Reinstatement Agreement, the WNAP Note, the Royalty Note and the August Agreement. By failing to perform or pay these obligations as guarantor, Plaintiffs contend that Saverin breached the guarantees and directly caused damages exceeding $1,400,000.00. On March 7, 2008 Plaintiffs filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs ask this Court to order Saverin to abide by his contracted obligations and to enter summary judgment on the issue of liability in favor of Plaintiffs on their claim for the breach of the August 3, 2006 Agreement, to enter a judgment in favor of Plaintiffs on Saverin's counterclaim for breach of good faith and fair dealing, and to enter judgment, in part, against Saverin for Plaintiffs' damages. This motion does not address the issue of damages accruing after August 3, 2006 which is alleged in Plaintiffs' Complaint to be approximately $373,563.00 as of January 12, 2007 or debts identified under section 9(B) of the August Agreement to be approximately $131,856.21.

## II. Standard of Review

Rule 56(a) provides a party may seek summary judgment upon "all or part" of a claim. Fed. R. Civ. P. 56(a). The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." *Id.*  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad v. Woodcrest Condo. Ass'n,* 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson,* 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e));  *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial").  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to 'simply show that there is some

7

metaphysical doubt as to the material facts.' " *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (J. Rice) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

It is with this standard in mind that the instant motion will be decided.

### III. Analysis

Plaintiffs move for partial summary judgment relating to Saverin's alleged failure to perform his contractual obligations as guarantor of his former franchise businesses. A breach of contract claim requires "(1) the existence of a binding contract or agreement; (2) that Plaintiffs performed their contractual obligations; (3) that Defendant failed to fulfill his contractual obligations without legal excuse; and (4) that Plaintiffs suffered damages as a result of the breach. *Bird v. Delacruz*, 411 F. Supp. 2d 891, 896 (S.D. Ohio 2005) (*citing Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 661 N.E.2d 218, 226 (1995) (*citing Nat'l City Bank v. Erskine & Sons,* 158 Ohio St. 450, 110 N.E.2d 598 (1953))). There is no dispute that the parties entered a binding contractual agreement on August 3, 2006. Additionally, there is no dispute that WenAmerica and Saverin failed to cure defaults pursuant to the August Agreement. Plaintiffs aver that by signing the August Agreement individually as guarantor, Saverin thereby promised to "perform the obligation immediately upon the debtor's default" making it "unnecessary to first pursue and exhaust the principal before proceeding against the guarantor.*" Eden Realty Co. v. Weather-Seal, Inc*., 102 Ohio App. 219, 222 (Ohio App. 1957). Therefore, Plaintiffs seek entry of judgment against Saverin, personally as guarantor, for damages in the amount of $947,819.86 under Section 9(A) of the August Agreement, de-identification costs, and

8

cost and fees incurred in enforcing its rights.   Further, Plaintiffs seek summary judgment on Saverin's counterclaim for breach of the implied covenant of good faith and fair dealing.

### A.  Plaintiffs are Entitled to Summary Judgment on the Issue of Saverin's Counterclaim for Breach of the Implied Covenant of Good Faith.

There is no dispute that Plaintiffs performed their express obligations under the August Agreement.  Instead Saverin argues that Plaintiffs did not perform its obligations of the implied duty of good faith and fair dealing.  This Court disagrees with Saverin's interpretation of the facts.

A duty of good faith is implied in every contract.  *Littlejohn v. Parrish*, 163 Ohio App.3d 456, 462, 2005 Ohio 4850, 839 N.E.2d 49 (2005).  The duty of good faith requires the parties to deal reasonably with each other, and it applies where one party has discretionary authority to determine certain terms of the contract.  *Id*. at 463.  Good faith " 'is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." '  *Ed Schory & Sons, Inc. v. Francis,* 75 Ohio St. 3d 433, 1996 Ohio 194, 662 N.E.2d 1074 (1996) (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir. 1990).

Previously, Plaintiffs' took actions which ultimately prevented the appointment of a receiver over WenAmerica's businesses.  Relying on this, Saverin claims that Plaintiffs had an affirmative duty to take actions that would prevent the appointment of a receiver and that Plaintiffs breached this duty when it changed its position with regard to the appointment of a

9

receiver over WenAmerica's restaurants. Plaintiffs' inaction allegedly led to the appointment of a receiver and deprived WenAmerica and Saverin of the opportunity to sell the restaurants.

Although Plaintiffs prevented the appointment of a receiver in the past, this obligation was not expressed in any of the written agreements held between the parties. As acknowledged by Saverin, the clear and express purpose of the August Agreement was to afford WenAmerica and Saverin a brief period of time within which to attempt to sell the restaurants operated by WenAmerica. However, it was also understood that Plaintiffs had the exclusive right under the August Agreement to terminate the Franchise Agreements upon the appointment of a Receiver:

> It is understood that in the event a receiver is appointed over any of the Restaurants, Wendy's intends to terminate the applicable Franchise Agreements associated with those restaurants.

Exhibit 6 at § 6, p.3; Def's Mem, at 10-11. Where the terms of an existing contract are clear and unambiguous, the court "cannot create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract." *Hamilton Insurance Services, Inc. v. Nationwide Insurance Cos.,* 86 Ohio St.3d 270, 273, 1999 Ohio 162, 714 N.E.2d 898 (1999). The duty of good faith and fair dealing may not be invoked to override express contract terms. *Stephenson v. Allstate Insurance Co.,* 328 F.3d 822, 826 (6th Cir. 2003); *Interstate Gas Supply, Inc. v. Calex Corp.,* 2006 Ohio 638, 2006 WL 328679 at *20 (Ohio App. 2006) (citing *Hamilton Ins. Servs.,* 86 Ohio St.3d at 274.

Here, Saverin argues that the contract had an implied obligation to oppose the appointment of a receiver over WenAmerica's business. Where the terms in an existing contract are clear and unambiguous**,** a court cannot in effect create a new contract by finding intent not expressed in the clear terms of a contract. *Joseph Bros. Co. v. F.W. Woolworth Co*., 844 F.2d

369, 371 (6th Cir., April 18, 1988). The August Agreement was created by sophisticated parties, and contained a merger clause which provided: "there are no covenants, promises or agreements either oral or written related to the subject matter of this agreement other than those set forth herein." *See* Complaint, Exhibit 6 § 15, at 6. Plaintiffs had the contractual right to terminate the Franchise Agreements when WenAmerica and Saverin failed to cure financial defaults and a receiver was later appointed. Therefore, Plaintiffs did not breach any express or implied obligation.

Taking all evidence in the light most favorable to Saverin, the Court concludes that Plaintiffs have met its burden of showing that there is no material issue of fact for trial and that they are entitled to Summary Judgment on Saverin's counterclaim.

### B. Saverin is Liable for the Franchisees' Breach of the August Agreement.

Saverin contends that the August Agreement (1) does not contain a blanket guarantee by Saverin of all WenAmerica's obligations and (2) that the damages sought by Plaintiffs, $947,819.86, include amounts not contemplated by the promissory notes. This Court disagrees.

First, the August Agreement specifically states that Saverin is "referred to as 'Guarantor' and collectively with Franchisee referred to herein as 'WenAmerica.' " *Id*. at p. 1. Therefore, all obligations of WenAmerica under the August Agreement are also the obligations of Saverin by express definition. The guaranty is "an *independent, collateral agreement* by which [the guarantor] undertakes to pay the obligation if the primary fails to do so.'' *Mazur v. Young*, 507 F.3d 1013 , 1019 (6th Cir., 2007). Thus, Saverin is individually liable for all obligations not fulfilled by WenAmerica under the terms of the August Agreement.

Further, WenAmerica and Saverin's obligations under the Franchise Agreements are not

11

superseded by the August Agreement.  Saverin believes that he is not liable for these obligations because his individual guarantees were superseded by the fully integrated August Agreement.  Def's Mem. at p. 18.  However, the Franchise Agreements and Saverin's personal guarantees are expressly referenced in the August Agreement.  *See* Exhibit 6 p. 1 ("WenAmerica and Wendy's have entered into various Unit Franchise Agreements… and Guarantor has executed a Guaranty in connection therewith."); at § 2 (noting the Franchise Agreements survive the formation of the August Agreement); § 6 ("Until the applicable Termination Date and except as otherwise specifically provided herein, WenAmerica shall operate each of the Restaurants… in compliance with the respective Franchise Agreements…").  "Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument." 11 Williston on Contracts § 30:25 (4th ed. 2008); 17A Am. Jur.2d Contracts § 391.  Construing the contract as a whole, Saverin's obligations as guarantor under the Franchise Agreements are therefore incorporated into the August Agreement.

Secondly, Saverin's liability is not limited to only the promissory notes.  Paragraph 9(A) of the August Agreement reads:

> Wendy's reserves all of its rights under the Promissory Notes to pursue WenAmerica and Guarantor for the full principal balance of the Promissory Notes (plus any accrued interest) *and any other outstanding amounts.*

Exhibit 6 § 9(A) (emphasis added).  These additional outstanding amounts (including rent, taxes, and late charges) were set forth in Exhibit F of the August Agreement and agreed to by WenAmerica*. Id*.

This is also true for de-identification obligations specified in the August Agreement. In paragraph 5 of the August Agreement, WenAmerica agreed to remove all Wendy's signs within 5 days of the termination date and to de-identify each of the restaurants within 30 days of the termination date. WenAmerica defaulted on this obligation. Thus, Saverin is personally liable for the costs, expenses, and fees incurred in de-identifying WenAmerica's restaurants. Additionally, the Franchise Agreements obligate WenAmerica and Saverin to personally and individually pay Plaintiffs' costs, expenses, and fees incurred in enforcing its rights. Exhibit 1 & 2. As indicated above, this obligation was agreed to by Saverin and his individual guaranties are expressly incorporated into the August Agreement by reference. Thus, Saverin is personally liable for Plaintiffs costs, expenses, and fees incurred in enforcing its rights.

Taking all evidence in the light most favorable to Saverin, the Court concludes that Plaintiffs have met its burden of showing that there is no material issue of fact for trial and that they are entitled to entry of Summary Judgment on Saverin's liability for breach of the August Agreement and damages associated therein.

### C. Plaintiffs Have Demonstrated Damages for Breach of Contract.

As a general principal, Plaintiffs "[are] not entitled, through the award of damages, to achieve a position superior to the one it would reasonably have occupied had the breach not occurred." *LaSalle Talman Bank*, F.S.B. v. U.S., 317 F.3d 1363, 1371 (Fed. Cir. 2003). Saverin contends that the alleged breach of his obligations as WenAmerica's guarantor have conferred a direct benefit on Plaintiffs that would have been unavailable if the original contract had been performed. Doc # 48, at 20. In support of his argument, Saverin retained expert James McClave, Ph.D. to predict Plaintiffs' post-termination profits. After reviewing the available

13

information, Dr. McClave calculated that Plaintiffs' will receive a net gain of approximately $6,463,242, before tax, resulting from Plaintiffs' termination of WenAmerica's franchise agreement. Thus, Saverin argues that because Plaintiffs gained substantially from the alleged breaches of WenAmerica and Saverin, it cannot demonstrate that it suffered damages as a result of the alleged breaches. However, Plaintiffs do not seek damages for future royalties or lost profits resulting from the breach. Rather, it seeks payment of past due obligations in the amount of $947,819.86 and has provided sufficient evidence in support of this amount. Compl. ¶ 32, at 7. Saverin has not presented any evidence which creates a material issue of fact regarding the damages for past obligations.

## IV. Conclusion

Based on the forgoing, the Court **GRANTS** Plaintiffs' Motion for partial Summary Judgment. (Doc. # 44). This Court specifically finds that Plaintiffs are entitled to judgment in their favor on Defendant's Counterclaim for breach of implied covenant of good faith. The Court further finds that Defendant breached the August Agreement and owes to Plaintiff $947,819.86 plus de-identification costs and expenses incurred in enforcing their rights, the amounts of which will be determined at a later date.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE